IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


KELLI L. CLARK                                                    PLAINTIFF

vs.                                    Civil No. 1:06-cv-01103

MICHAEL J. ASTRUE[1]                                           DEFENDANT
Commissioner, Social Security Administration


**MEMORANDUM OPINION**

Kelli L. Clark ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social

Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of

the Commissioner of the Social Security Administration ("SSA") denying her applications for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and

XVI of the Act.  The parties have consented to the jurisdiction of a magistrate judge to conduct any

and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment,

and conducting all post-judgment proceedings.  (Doc. No. 8).[2]  Pursuant to this authority, the Court

issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

Plaintiff's applications for DIB and SSI now before this Court were protectively filed on

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

[2] The docket numbers for this case are referenced by the designation "Doc. No."  The transcript pages for this case are referenced by the designation "Tr."

1

March 26, 2004.[3]  (Tr. 52-53, 661).  Both applications allege an onset date of September 21, 2003.  (Tr. 53, 661).  In these applications, Plaintiff alleges she is disabled due to a left arm injury with complications,[4] Hepatitis C, and depression.[5]  (Tr. 69-78).

Plaintiff's applications were initially denied on July 2, 2004 and were denied again on reconsideration on April 19, 2005.  (Tr. 29-30, 665).  Plaintiff requested an administrative hearing which was held on March 13, 2006 in El Dorado, Arkansas.  (Tr. 669-693).  Plaintiff was present and was represented by an attorney, Denver Thornton, at the hearing.  *See id.*  Plaintiff and Tyra Watts, a Vocational Expert ("VE"), testified at this hearing.[6]  *See id.*  At the time of the hearing, Plaintiff was twenty-nine (29) years old, which is classified as a "younger individual" under 20 C.F.R. § 404.1563(c) (2007), and had completed the twelfth grade in school.  (Tr. 672, 676).

On June 28, 2006, the Administrative Law Judge ("ALJ") issued a written opinion.  (Tr. 9-18).  The ALJ determined that Plaintiff met the insured status requirements of the Act on her alleged onset date and continued to meet them through December 31, 2005.  (Tr. 13, Finding 1).  The ALJ determined that Plaintiff had not engaged in Substantial Gainful Activity ("SGA") at any time relevant to the ALJ's decision.  (Tr. 13, Finding 2).  The ALJ determined Plaintiff suffered from the severe impairments of "residuals from a broken left arm; history of Hepatitis C; depression/bipolar

---

[3] The record does not provide Plaintiff's protective filing date for SSI.  However, Plaintiff's protective filing date for DIB was March 26, 2004, and the record indicates that Plaintiff had the same protective filing date for her SSI application as she did for her DIB application.  (Tr. 52, 661).

[4] Plaintiff stated at the administrative hearing that she suffered from pain in both her upper left arm and in her left hand.  (Tr. 687-688).

[5] Plaintiff claims in her appeal brief that she suffers from "depression/bipolar disorder."  (Doc. No. 7, Page 1).  Plaintiff, however, did not claim that she suffers from bipolar disorder in either her applications or at the administrative hearing.

[6] The VE testified by telephone.  (Tr. 671).

2

disorder; and polysubstance abuse." (Tr. 14, Finding 3). The ALJ determined these were severe impairments but did not find that Plaintiff had an impairment or a combination of impairments that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 14, Finding 4).

The ALJ also evaluated Plaintiff's subjective complaints and determined Plaintiff's Residual Functional Capacity ("RFC"). (Tr. 14-16, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints pursuant to *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) and determined that Plaintiff's testimony was not fully credible. (Tr. 15-16). The ALJ then gave reduced weight to Plaintiff's allegations regarding her pain and limitations to the extent they impact her ability to do basic work. *See id.* Second, the ALJ determined Plaintiff's RFC. (Tr. 14-15, Finding 5). Specifically, the ALJ determined Plaintiff retained the RFC to perform the following:

> [L]ift/carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours in an 8 hour day; and stand/walk 6 hours in an 8 hour day. . . . [she is] restricted to occasional overhead reaching using her left upper extremity. . . . [she] experiences mild to moderate pain. Non-exertionally, she can perform simple unskilled work involving rote activity and understand, follow, remember, and [sic] concrete instructions and maintain superficial contact with supervisors, co-workers, and public to meet, greet, make change, and give simple instructions and directions.

(Tr. 14-15, Finding 5). In making this RFC determination, the ALJ excluded Plaintiff's substance abuse from consideration and evaluated Plaintiff's other claimed impairments, apart from her substance abuse. *See id.*

Based upon this RFC determination, the ALJ found that Plaintiff could not perform her Past Relevant Work ("PRW") but found that Plaintiff could perform work that exists in significant

numbers in the national economy.[7]   (Tr. 16-17, Finding 6, 10).  Vocational Expert ("VE") Tyra

Watts, an independent vocational expert, testified at the hearing and addressed these issues.  (Tr.

689-693).  The VE testified that Plaintiff's PRW included work as a Licensed Practical Nurse

("LPN"), which is medium, skilled work, and has a *Dictionary of Occupational Titles* (DOT) job

code of 354.374-010.  (Tr. 689-690).  The ALJ determined that a hypothetical person the same age

as Plaintiff with the same RFC and education could not perform Plaintiff's PRW as an LPN.  *See*

*id.*  The VE, however, testified that a hypothetical person the same age as Plaintiff and with the same

RFC and education could perform work as a Cashier II (25,000 jobs in the state of Arkansas and 3.7

million jobs in the nation) and as a Companion (5,070 jobs in the state of Arkansas and 500,000 jobs

in the nation).  (Tr. 690-691).  Based upon this testimony, the ALJ determined that Plaintiff was not

disabled.  (Tr. 17, Finding 11).  Specifically, the ALJ determined that "[i]f the claimant stopped the

substance use, considering the claimant's age, education, work experience, and residual functional

capacity, there would be a significant number of jobs in the national economy that the claimant could

perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966)." (Tr. 17, Finding 10).

On September 21, 2006, the Appeals Council declined to review the ALJ's June 28, 2006

hearing decision.  (Tr. 4-6).  Subsequently, Plaintiff filed the present action.  (Doc. No. 1).  This case

was referred to the undersigned on February 20, 2007.  Plaintiff and Defendant have both filed

appeal briefs.  (Doc. Nos. 7, 9).  This case is ready for decision.

## 2. **Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's

---

[7] These findings were based upon the assumption that Plaintiff no longer suffered from a substance abuse problem.

findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently

engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3. <u>Discussion</u>:**

Plaintiff brings the present appeal claiming the ALJ erred by improperly considering Plaintiff's substance abuse. (Doc. No. 7, Page 11). Plaintiff admits she has a substance abuse problem. *See id.* at 1. However, Plaintiff claims that even if she would have stopped using drugs during the relevant time period, she still would have been disabled. *See id.* Specifically, Plaintiff claims that because of a left arm injury, she was disabled from September 21, 2003 until August 27, 2005, and she claims the ALJ erred in evaluating her claimed impairments and in determining she was not disabled during that time period. *See id.* Furthermore, Plaintiff claims she is currently disabled because she suffers from bipolar disorder and claims the ALJ erred in failing to find that she was disabled due to her bipolar disorder. *See id.* at 11-12.

In response, Defendant argues that the ALJ properly evaluated Plaintiff's claimed impairments and properly determined that these impairments did not support a finding of disability. (Doc. No. 9, Page 4). Defendant argues that Plaintiff's injury to her left arm was unnecessarily

6

prolonged because of her drug use.  *See id.* at 6.  Defendant also argues that Plaintiff did not comply

with her doctors' proposed course of treatment and, as a result, should not be awarded any disability

benefits.  *See id.* at 7.  In response to Plaintiff's argument that she suffers from bipolar disorder,

Defendant argues that Plaintiff neither raised this issue in her applications nor at her hearing and that

the ALJ was not required to address this issue in his opinion.  *See id.*  This Court will address each

of Plaintiff's arguments in order.

### A. Plaintiff's Left Arm Injury

First, Plaintiff claims she was disabled from September 21, 2003 until August 27, 2005 while

her left arm was injured.  (Doc. No. 7, Page 9).  Plaintiff claims that on September 21, 2003, she was

involved in a serious motor vehicle accident in Magnolia, Arkansas.[8]  *See id.* at 5.  After this

accident, Dr. Michael Pappas, Plaintiff's treating physician, determined that Plaintiff had injured her

left forearm and suffered from an "Open both-bone forearm fracture."  *See id.*; (Tr. 123).  Plaintiff

claims that the injury from this motor vehicle accident lingered until August 27, 2005 when she

ultimately received the following diagnosis: "IMPRESSION: 1. Healed fracture of the radius and

ulna; 2. Degenerative arthritis involving the radiocarpal joints."  (Doc. No. 7, Page  9); (Tr. 567).

Plaintiff claims that during this time period–September 21, 2003 to August 27, 2005–she was

disabled, and the ALJ should have evaluated Plaintiff's medical records and determined she was

disabled during that time period.  (Doc. No. 7, Page 9).

Defendant argues that even though Plaintiff was injured on September 21, 2003, Plaintiff's

---

[8] Prior to this accident, Plaintiff was involved in other motor vehicle accidents.  On May 2, 2003, Plaintiff was admitted to the emergency room in the Magnolia, Arkansas hospital for a cut to her upper lip.  (Tr. 590-591).  She reported that she had cut her lip when she "fell out of the back of the boat onto the concrete with a beer bottle in her hand."  *See id.*  Plaintiff was also admitted to the Magnolia, Arkansas hospital after she fell asleep while driving.  (Tr. 586-588).  As a result of this accident, Plaintiff suffered from a facial contusion, a left knee laceration, maxillary sinusitis, and a nosebleed.  (Tr. 586-588).

injury was unnecessarily prolonged due to her alcohol and drug abuse.  (Doc. No. 9, Page 6).
Defendant argues that Plaintiff underwent surgical repair of her arm on September 23, 2003 during
which rods were placed in her left arm.  *See id.* at 4.; (Tr. 212-213).  Defendant claims that Plaintiff
was hospitalized and underwent surgery from December 5, 2003 until December 7, 2003 in order
to remove the rods from her left arm and that, after this surgery, Plaintiff's arm was put in a sling.
(Doc. No. 9, Page 5); (Tr. 225-277).   Defendant argues that Plaintiff's injuries after this
date–December 7, 2003–resulted from Plaintiff's alcohol and drug abuse and did not result from her
original September 21, 2003 injury.  (Doc. No. 9, Page 6).

This Court finds Defendant's arguments persuasive and cannot award benefits to Plaintiff
for three reasons: (1) Plaintiff cannot meet the duration requirements of the Act, (2) Plaintiff has not
provided any medical evidence suggesting that she was restricted in her ability to work during the
relevant time period, and (3) Plaintiff failed to follow her treating doctors' prescribed course of
treatment.  This Court will address each of these issues in order.

### (1) Duration Requirement of the Act

The Act requires that a claimant applying for social security disability benefits establish that
he or she suffers from a disability that "has lasted . . . for a continuous period of not less than 12
months."  20 C.F.R. § 404.1505(a) (2007).  In the present action, Plaintiff claims that the injury to
her left arm lasted for the requisite time period.  (Doc. No. 7, Page 9).  However, Plaintiff's medical
records indicate that her September 21, 2003 injury should have recovered shortly after December
7, 2003.  Accordingly, Plaintiff's injury to her left arm did not last continuously for the requisite time
period.

Specifically, Plaintiff's medical records indicate that her September 21, 2003 injury was
successfully recovering on December 7, 2003 when Plaintiff was able to leave the hospital with her

8

arm in a sling.[9]  (Tr. 123, 225-277).  Then, on April 4, 2004, Plaintiff was admitted to the emergency

room for injuring her left arm after she had fallen off a Mack truck while trying to put a note on that

truck.  (Tr. 575-576).  While at the emergency room, Plaintiff admitted to drinking that night and,

while she denied using drugs that night, she tested positive for opiate use just three days later on

April 7, 2004.  (Tr. 327, 575).  Plaintiff was subsequently admitted to the emergency room on April

6, 2004 for a follow-up visit. (Tr. 352).  Dr. Pappas, Plaintiff's physician, noted that upon arrival to

the emergency room on April 6, 2004, Plaintiff was "very inappropriate," was "somewhat not

appropriate in her speech," and had "slurred speech."  (Tr. 316).  When she was admitted to the

hospital on April 6, 2004, Plaintiff refused to take a drug test.  (Tr. 317).  Plaintiff, however, took

a drug test the next day, and she tested positive for opiate use.  (Tr. 327).

        Plaintiff's physician, Dr. Pappas, examined Plaintiff on April 6, 2004 and noted, "[t]he

patient is a 27-year-old, who on 04/06/04 re-injured her left forearm.  She had fallen back onto her

left arm sustaining the injury.  *Prior to this, she was actually doing quite well."* (Tr. 290) (emphasis

added).  On April 8, 2004, Dr. Pappas noted, "At this point [December 5-7, 2003], we removed the

flexible rods. . . . She was doing fine. . . . She came back to the hospital on April 6, 2004, with the

new injury to her distal ulna and this and segmental fracture.  *This had healed in the past."*  (Tr.

413).  There are also several other references in Plaintiff's medical records indicating that Plaintiff's

drug and alcohol problem had needlessly prolonged her left arm injury.  (Tr. 290, 413, 442, 526,

575).

        These reinjuries were not a continuation of Plaintiff's injury from September 21, 2003 but,

---

[9]A note from Dr. J. Rob Butler, D.C., dated January 8, 2004, indicates that Plaintiff may need to have
additional surgery on her left arm.  (Tr. 544).  Mr. Butler's opinion has been considered by this Court; however, Mr.
Butler is a chiropractor, and his opinion is not an acceptable source of proof to establish a disability.  *See* 20 C.F.R.
§ 404.1513; *Cronkhite v. Sullivan,* 935 F.2d 133, 134 (8th Cir. 1991).

instead, were the result of Plaintiff's own independent and destructive conduct.[10] Because Plaintiff's claimed debilitating injury did not last for a *continuous* period of twelve (12) months, Plaintiff cannot meet the duration requirement of the Act.[11]

### (2) Work Limitations During the Relevant Time Period

Furthermore, even assuming Plaintiff could prove that her left arm was injured continuously for twelve (12) months as a result of her September 21, 2003 accident, she still cannot establish she was disabled during the relevant time period.  In her appeal brief, Plaintiff referenced *no evidence* that her doctors had ever restricted her in her ability to work, and Plaintiff's own treating physician, Dr. Pappas, even refused to write of letter of disability for Plaintiff: "Pt wants letter of disability. Letter denied per Dr. Pappas."[12]  (Tr. 468).  Plaintiff has the burden of establishing her RFC.  *See Goff v. Barnhart,* 421 F.3d 785, 791.  Plaintiff has not met her burden in this case; and, therefore, *even if* Plaintiff could establish her left arm was injured for twelve (12) continuous month, she still could not establish she was disabled during the relevant time period.

### (3) Failure to Follow Treatment

Even more disturbing in this case is Plaintiff's refusal to follow her doctors' prescribed

---

[10] Plaintiff even admitted at the hearing that she was taking street drugs during her fall in April of 2004. (Tr. 677).

[11] Plaintiff tries to extend her claimed disability until August 27, 2005.  (Tr. 567).  However, what Plaintiff fails to note is that during this August 27, 2005 examination, Dr. Griffin stated, "the previously noted fractures [referring to Plaintiff's April 4, 2004 injuries] *appear to have healed.*"  The only other medical record from April 4, 2004 (the date of Plaintiff's injury) to April 4, 2005 (the requisite date to meet the one-year requirement of the Act) that Plaintiff noted in her appeal brief is from October 5, 2004.  (Doc. No. 7, Page 9).  This October 5, 2004 medical record cannot establish a continuous disability for the one-year period from April 4, 2004 until April 4, 2005. Accordingly, Plaintiff cannot meet the duration requirement of the Act.

[12] A note from Dr. Byron Grimmett, written on an prescription form, is included in the transcript.  (Tr. 556). In this note, Dr. Grimmett indicates that Plaintiff's left arm is injured and that "she can no longer work in her occupation."  (Tr. 556).  No other medical records from Dr. Grimmett are included in the transcript.  Indeed, there is no indication that Dr. Grimmett ever even treated Plaintiff.  However, even assuming Dr. Grimmett is correct in his opinion, Plaintiff is still not disabled because, as the ALJ determined, Plaintiff can perform several *other* jobs.  (Tr. 16-17, Finding 10).

course of medical treatment. Plaintiff's treating physician, Dr. Pappas, noted repeatedly that Plaintiff had been non-compliant with her treatment and follow-up care. (Tr. 316, 413, 448, 453, 468). On April 9, 2004, Plaintiff was uncooperative in her treatment and refused to keep ice on her arm. (Tr. 371). On April 21, 2004, Dr. Pappas noted that Plaintiff was taking street narcotics and that Plaintiff "state[d] that she . . . [was] going to continue to do her drugs." (Tr. 442). Dr. Pappas was concerned that her street drug use would cause her to reinjure her arm: "When she is on her narcotics, she potentially could reinjure her left arm, which she has most recently done." *See id.* Despite Dr. Pappas advisement, Plaintiff continued to take drugs, and on April 21, 2004, Plaintiff was seen by Dr. Richard Adams and reported to him that she was still taking drugs. (Tr. 532). In fact, during this visit, Plaintiff admitted to Dr. Richard Adams that ***she had injected crystal methamphetamine into her injured left arm***. *See id.*

Clearly, Plaintiff has exhibited complete disregard for her doctors' recommendations and prescribed course of treatment. In order to be awarded social security benefits, a claimant is required to follow a prescribed course of treatment. *See* 20 C.F.R. § 404.1530(a). Because Plaintiff has not complied with her doctors' course of treatment during the relevant time period, Plaintiff cannot be awarded social security disability benefits for her injured left arm. *See id.*

**B. Bipolar Disorder**

Second, Plaintiff claims in her appeal brief that she is disabled because she suffers from bipolar disorder. (Doc. No. 7, Pages 9-11). Plaintiff claims her bipolar disorder caused her to abuse drugs. *See id.* Specifically, Plaintiff claims, "the disability herein is bipolar. It has many elements, one of which can be drug use. It is not uncommon for bipolar individuals to self-medicate with all forms of drugs." *See id.* Defendant claims that the record does not support Plaintiff's claimed disability due to bipolar disorder. (Doc. No. 9, Page 9). Defendant also claims that Plaintiff did not

11

allege she was disabled due to her claimed bipolar disorder either at the time of her applications or at the time of her hearing and that Plaintiff's failure to allege a disability based upon bipolar disorder "belies Plaintiff's argument that this is now a disabling impairment."  *See id.*

A claimant in a social security disability action is required to raise a claimed impairment in either his or her application or at the administrative hearing in order for the ALJ to consider that claimed impairment.  *See Pena v. Chater,* 76 F.3d 906, 909 (8th Cir. 1996).  In the present action, Plaintiff did not raise the claimed impairment of bipolar disorder in either her applications or at the time of the administrative hearing.  Therefore, the ALJ was not required to consider Plaintiff's claim that she suffers from bipolar disorder and did not err in failing to find that Plaintiff is disabled due to her claimed bipolar disorder.  *See id.*

**4.** **Conclusion:**

Based on the foregoing, the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed.  A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 12th day of September, 2007.**

/s/   Barry A. Bryant
Honorable Barry A. Bryant
United States Magistrate Judge

12